UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BARRY AGOSTI and ROBIN AGOSTI | : | |
| | : | Case No. 3:16-cv-01686 (SRU) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MERRIMACK MUTUAL FIRE | : | |
| INSURANCE COMPANY and | : | |
| ALLSTATE INSURANCE COMPANY | : | JANUARY 3, 2017 |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs, in their opposition brief, attempt to characterize their loss as a "chemical reaction that occurred on [the] property," which, they claim, is not expressly excluded under the Policy. (ECF No. 22, Pl. Opp. Mem., p. 4-7).  Plaintiffs also claim that they "have a [v]iable [c]laim for [c]ollapse," (Id., p. 7) without ever addressing this Court's recent decision in *Alexander v. General Ins. Co. of America*, No. 3:16-cv-0059 (D. Conn.) or the Allstate policy language regarding "collapse," in particular the requirement that collapse be "sudden," a term that means "temporally abrupt."  *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536, 791 A. 2d 489 (2002).

Plaintiffs' claimed "chemical reaction" is simply another way of describing the process of deterioration—the oxidation, or rusting. of pyrrhotite, a mineral within the concrete aggregate that is causing the concrete to crack in places.  This cracking is not a "sudden and accidental" loss, but, rather, as Plaintiffs allege in their complaint, a process of "progressiv[e] deteriorat[ion of] the basement walls."  (ECF No. 1, ¶ 7, p. 8).  The Allstate Policy, however, does not cover the cracking of foundation walls over time due to defects in the original concrete.  Such a

condition (1) is not "sudden and accidental" loss under the Policy; (2) falls within specific Policy exclusions, and (3) does not fall within the limited Policy coverage for collapse. (ECF No. 17-1, Def. Mem., pp. 9-14).

I.      **ARGUMENT**

> **A. Plaintiffs' "Chemical Reaction" Argument is Unavailing, as Their Claimed Loss is Not Within the Scope of Policy Coverage.**

Plaintiffs argue that (1) their loss is due to "chemical reaction;" (2) there is no "chemical reaction" exclusion in the Allstate Policy; and (3) therefore, the loss must be covered.  (ECF No. 22, Pl. Mem., pp. 4-7).  But Plaintiffs' claimed loss is the cracking of their foundation walls, not the process that led to their cracking.  One would not call a house fire a "chemical reaction" of fuel, combustion and oxygen, or characterize wood rot damage was the "chemical reaction" of enzymes from bacteria and fungi.  Chemical reactions are part of everyday life.  Regardless of what chemical reactions may have taken place in Plaintiffs' foundation concrete over the years, the claimed losses here - what the Policy is alleged to cover - are "visible cracking patterns" and "deterioration and cracking" in foundation walls. (ECF No. 1, Compl., Count Four, ¶¶ 6,7).[1] Such losses are not within the scope of Policy coverage.

> **i. The "Chemical Reaction" was not a Sudden and Accidental Direct Physical Loss to Property and is Not Covered Under the Policy.**

Even if the chemical reaction involved in the concrete deterioration were treated, erroneously, as somehow separate from the deterioration itself, the loss would still not fall under the Policy's grant of coverage, which is limited to "**sudden** and accidental direct physical loss" to covered property.  (ECF No. 17-4, Def. Mem., Exh. C, p. 31) (emphasis added).  Plaintiffs do

---

[1] Plaintiffs attempt to characterize the cracking as "just a further manifestation of a 'sudden and accidental physical loss' that has already occurred." (Def. Mem., ECF No. 19-1, p. 4). This is disingenuous.  There is no ascertainable loss here other than cracking.  But for cracking, there would be no claim and Plaintiffs do not dispute that their claimed loss is gradual.

not argue that their loss is "sudden."  In various places in their Complaint and Opposition Memorandum they characterize the cracking as "progressive deterioration," "resulting from incompatible materials used in the concrete mix," "that has already occurred (and continues to occur) after the pyrrhotite in the concrete is exposed to water and air." (ECF No. 1, Compl., Count Four, ¶ 10; Pl. Mem., ECF No. 22, pp. 5, 7).  As Allstate notes in its main brief, the Connecticut Supreme Court has held that the term "sudden," means "temporally abrupt," and that "a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process" cannot be considered to be "sudden."  *Buell,* supra, 259 Conn. at 544; Def. Mem., ECF No. 19-1, p. 10-11.  By Plaintiffs' admission, the damage is continuous, and "will continue to progressively deteriorate the basement walls. . . ."  (ECF No. 1, Compl., Count Four, ¶ 7).[2]  There is nothing "sudden" or abrupt about a process of deterioration that has occurred slowly and incrementally since the first pouring of the concrete.  Plaintiffs' loss does not fall within the Policy's grant of coverage.

### ii. Plaintiffs' Alleged Loss is Cracking in Concrete Caused by Defective Construction Materials, Which is Excluded Under the Policy.

Plaintiffs state in the Complaint that their loss consists of "visible cracking patterns in the concrete of their home" caused by "defective materials."  (ECF No. 1, Compl., Count Four, ¶¶ 5, 10).  The Policy excludes losses either "consisting of" or "caused by" cracking of walls and defective materials.  (ECF No. 17-1, Def. Mem., pp. 6-9; ECF No. 17-4, Def. Mem., Exh. C, p. 32).

---

[2] Engineers retained by both parties agree that the cracking at issue is caused by progressive deterioration. (ECF No. 1, Compl., Count Four,  ¶ 7; ECF No. 22-1, Pl. Mem., Exh. A, p. 1; ECF No. 17-5, Def. Mem., Exh. D, pp. 2-3).

Neither Plaintiffs nor their engineer[3] disputes Allstate's conclusion, supported by scientific analysis of concrete samples, that the foundation cracking resulted from the composition of the aggregate in the original concrete mix.  (ECF No. 1, Compl., ¶ 7, p. 8; ECF No. 22, Pl. Mem., p. 5; ECF No. 22-1, Pl. Mem., Exh. A, p. 1, ECF No. 17-5, Def. Mem., Exh. D, p. 2).   The Policy excludes coverage for "loss consisting of or caused by . . . faulty, inadequate, or defective . . . materials used in . . . construction . . . of property."  (ECF No. 17-1, Def. Mem., pp. 6-9; ECF No. 17-4, Def. Mem., Exh. C, p. 32).   Plaintiffs admit that what they call a "chemical reaction" consisted of, or was caused by, defective or inadequate materials used in the construction of the foundation (ECF No. 1, Compl., Count Four, ¶10).   The claimed loss is therefore plainly excluded under the Policy.  (ECF No. 17-1, Def. Mem., pp. 6-9).

Plaintiffs also argue that "[w]hether the walls crack, bow, fall down, or mysteriously disappear into thin air, th[is] does not mean a physical loss did not occur due to a chemical reaction that happened within."  (ECF No. 22, Pl. Mem., p. 6).  This statement begs the question. As noted above, chemical reactions are an everyday part of the natural world.  They are not, in and of themselves, a loss.  The loss here is obvious and undisputed—cracked foundation walls. The Policy does "not cover loss consisting of or caused by . . . cracking [or] bulging . . . of foundations [or] walls . . . ."  (ECF No. 17-4, Def. Mem., Exh. C, p. 32).  A loss *consisting of* cracking or bowing to a foundation wall, like Plaintiffs' loss here, is clearly excluded under the Policy.  (Id., pp. 31-33).

---

[3]As Allstate has previously noted, a court, in adjudicating a motion to dismiss, may consider "any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013).  Plaintiffs have referenced Allstate's denial of their claim and the contents of that denial letter as an integral part of their breach of contract claim. (ECF No. 1, Compl., Counts Four – Six, ¶¶ 11-12, 15, 17-22). The Court may therefore consider it for purposes of ruling on the Motion to Dismiss. Leonard Morse-Fortier's engineering report (ECF No. 17-5, Def. Mem., Exh. D, pp. 2-5) is referenced in Allstate's denial letter and was attached to the letter itself.  Plaintiffs have attached their own engineer's report to their Opposition Memorandum (ECF No. 22-1, Pl. Mem., Exh. A), making it part of the record on the Motion to Dismiss.

4

### iii.  Loss Caused by Chemicals, Rust, or Other Corrosion is Not Covered Under the Policy.

As Allstate expressly stated in its denial letter, the "chemical reaction" that it identified in the concrete—namely the expansion of reactive pyrrhotite—is excluded under the Policy.  The Policy provides, in *Losses We Do Not Cover Under Coverages A and B*:

> *We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B — Other Structures Protection consisting of or caused by:*
>
> *15.*                              * * *
>
> > d)    ___*rust or other corrosion*___*, mold, wet or dry rot;*
> >
> > e)    *contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, **chemicals**, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;*
>
> * * *

(ECF No. 17-4, Def. Mem., Exh. C, p. 32) (emphasis added).

Based on engineering review and sampling of concrete from Plaintiffs' foundation, Allstate concluded that the loss here is caused by the presence of the reactive mineral pyrrhotite, and noted that "[w]hen exposed to water and air, including ground water, the pyrrhotite expands, causing the concrete to develop cracks that gradually grow larger and more extensive."  (ECF No. 17-5, Def. Mem., Exh. D, pp. 2-4).  The engineering report attached to Allstate's denial letter further explains that when the "reactive" pyrrhotite is exposed to water and air it "oxidize[s] and expand[s]," which causes the cracking. (ECF No. 17-5, Def. Mem. Exh. D, p. 18).  Thus the "chemical reaction" in the concrete—the oxidation of pyrrhotite—falls within the exclusion for losses caused by or consisting of "rust or other corrosion."  (ECF No. 17-4, Def. Mem., Exh. C, p. 32; ECF No. 17-5, Def. Mem. Exh. D, p. 18).

5

**B.  The Limited Policy Coverage for "Collapse" Does Not Apply to Plaintiffs' Claim.**

Plaintiffs never address Allstate's Policy language regarding collapse, or the decision in *Alexander v. General Ins. Co. of America*, No. 3:16-cv-0059 (D. Conn.), in which this Court dismissed a complaint seeking coverage for a loss involving an allegedly defective concrete foundation, under policy language similar to Allstate's policy.[4]  Plaintiffs nevertheless state that they "have a [v]iable [c]laim for [c]ollapse."  (ECF No. 22, Pl. Mem., pp. 7-9).  But Plaintiffs' own characterization of their loss reveals that it is not a covered "collapse."

Because this case involves the interpretation of a written contract, Plaintiffs' omission of *any* discussion of what the Allstate Policy actually says about collapse is puzzling.  (ECF No. 17-4, Def. Mem., Exh. C, p. 40).  The Allstate Policy only covers an "entire collapse" of a building or part of a building that is "sudden and accidental."  (Id.).  Plaintiffs themselves categorize their loss as the "progressive deterioration" of their basement walls, which, under *Buell,* 259 Conn. at 544, is not a "sudden" loss.  (ECF No. 1, Compl., Count Four, ¶¶ 7, 10).  Plaintiffs' claim that they were only "fully appri[s]ed of the seriousness of the condition to their home" in 2015 does not help their "collapse" argument.  (ECF No. 22, Pl. Mem., p. 8).  As *Buell* makes clear, "sudden," as used in the phrase "sudden and accidental" in an insurance policy, does not mean "unexpected" but rather "temporally abrupt." *Buell*, 259 Conn. at 536, 544.[5]  In addition, as discussed in *Alexander*, a claim for mere cracking in a foundation is not covered under a policy collapse provision, like Allstate's, that expressly does <u>not</u> include "settling, cracking, bulging or expansion."  (ECF No. 17-2, p. 14, ECF No. 17-4, Policy, p. 40).

---

[4] Allstate's Memorandum in Support of Summary Judgment contains a thorough discussion of *Alexander* and it similarities with this case.  (ECF No. 17-1, Def. Mem., pp. 11-13).

[5] Plaintiff's citation to  *Parker v. Worcester Insurance Co.*, 247 F.3d 1, 5 (1ˢᵗ Circ. 2001) (ECF No. 21, Pl. Mem., p. 8-9) is inapposite, as *Parker* dealt with the issue of when a loss takes place for purpose of applying a policy's suit limitations clause, which is not at issue in this motion.

*Malbco Holdings, LLC v. Amco Ins. Co*., 629 F. Supp. 2d 1185 (D. Or. 2009), cited by Plaintiffs at page 8 of their brief, only serves to strengthen Allstate's argument that "suddenness" is an explicit requirement for collapse under the Policy.  In *Malbco*, the policy defined collapse, in relevant part, as "an **abrupt** falling down or caving in of a building," and the court recognized that "abrupt has a plain meaning, namely **sudden**."  *Id*. at 1193-95 (emphasis added; internal quotation marks omitted).  Accordingly, the court reasoned that the first issue in determining whether a collapse occurred under the policy was "whether an **abrupt event** caused part of the [building] to fall or cave in, such that part of it could not be occupied for its intended purpose." *Id*. at 1197  (emphasis added).  The experts in that case differed as to whether the event in question, the snapping of floor trusses that caused a hotel floor to fall three inches, occurred suddenly and abruptly.  *Id*. at 1198. Here, by Plaintiffs' own admission, the "event" in question is the "ongoing" damage to their foundation caused by "progressive[e] deteriorat[ion of] the basement walls."  (ECF No. 1, Compl., Count Four, ¶¶ 5, 7,10;  ECF No. 22, Pl. Mem., pp. 7-8). Plaintiffs do not allege a "sudden" or "abrupt" event.

Plaintiffs' reliance on *Dalton v. Harleysville Worcester Mut. Ins. Co*., 557 F.3d 88 (2d Cir. 2009), is similarly unavailing.  The policy in *Dalton*, unlike the Allstate Policy here, did not require that collapse be "entire" or "sudden and accidental."  The court, interpreting New York law, held that where a policy *did not* specify an "entire" or "sudden" requirement or otherwise define "collapse," a collapse caused by hidden decay or insect damage did not, as a matter of law, require a "sudden destructive force." *Id*. at 93.  The Second Circuit further noted that a case involving a policy that *did* require a "sudden impact" *would be distinguishable*.  *Id*. at 92 n.1.

Accordingly, *Dalton* is inapplicable in a case, such as this one, where the requirements of "entire collapse" and "suddenness" are written into the Policy's coverage.[6]

### C. Because Count Four Should be Dismissed, Counts Five (Breach of the Implied Covenant of Good Faith and Fair Dealing) and Six (Violation of CUTPA and CUIPA) Should Be Dismissed As Well.

Plaintiffs do not dispute that if there is no coverage under the Policy, there can be no liability for bad faith or a CUTPA/CUIPA violation. (*See* cases cited at ECF No. 17-1, Def. Mem., pp. 15-16). Therefore, *only* if the Court does not grant Allstate's motion to dismiss Count Four of the Complaint is it necessary to consider the allegations of Counts Five and Six.

As to bad faith, Plaintiffs attempt to distinguish *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL 6675532 (D. Conn. Oct. 30, 2015), in which the court adopted the well-recognized principle that an insurer's good faith denial of coverage does not constitute bad faith. *Id.*, at *3-4. Plaintiffs rely on *Gabriel v. Liberty Mutual Fire Ins. Co.*, No. 3:14-CV-01436, 2015 WL5684063 (D. Conn. Sept. 28, 2015) to support their position that some kind of bad faith "plausible inference" can be drawn from his Complaint. (ECF No. 21, Pl. Mem., pp. 9-10). Unlike the plaintiffs in *Gabriel*, however, the Plaintiffs here have not alleged that Allstate "ignored state and federal case law" when interpreting policy terms, or that Allstate "intentionally cited inapplicable policy language to mislead the [Plaintiff] into thinking that [his] claim was not covered in order to preserve [Allstate's] assets." *Gabriel*, supra, 2015 WL

---

[6]Plaintiffs, in passing, also suggest that "the structural integrity of the building certainly is in a state of collapse" and cite to a Maryland District Court decision, *130 Slade Condo Association, Inc. v. Millers Capital Insurance Co.*, 2008 WL 2331048 (D. Md. June 2, 2008) in support. (ECF No. 22, Pl. Mem., p. 9). In that case, however, the policy at issue required "an **abrupt** falling down or caving in of a building or any part of a building" in order for the additional coverage for collapse to apply, which the court held, meant "an **actual, abrupt, and major event** that renders the building structure unusable." *Id*., at *2, 4. (emphasis added). Applying this definition, the court concluded that the building had "caved in" and "suffer[ed] a serious impairment to its structural integrity" because it "buckle[d] three inches down and three inches to the south **during an abrupt event**, which render[ed] the building unsafe and subject to evacuation." *Id.*, at *5-6 (emphasis added). Here, Plaintiffs' alleged damage consists of the gradual deterioration of their foundation walls, *not* a sudden or abrupt event. (ECF No. 17-1, Def. Mem., pp. 9-15; ECF No. 17-4, Def. Mem., Exh. C).

5684063 at *5.  Instead, Plaintiffs' only "bad faith" allegation is that Allstate, "in its discretion, unreasonably and in bad faith, sought out other policy provisions and interpreted these and other policy provisions in a manner for the purpose of denying benefits despite the aforementioned provision of the policy conferring benefits."  (ECF No. 1, Compl., Count Five, ¶ 15).

Very recently, in *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-00510 (JCH), 2016 WL 6246300 (D. Conn. Oct. 25, 2016), Judge Hall dismissed an almost identical claim of bad faith in another concrete deterioration case.  In so doing, the court noted that "the plaintiffs allege that [the insurer] sought out policy provisions that allowed it to deny benefits and interpreted those provisions unreasonably and in bad faith.  Nothing in the Complaint provides the court with allegations that plausibly support an inference that CSAA acted in bad faith or with a sinister motive."  *Id.* at *3.

As noted in Allstate's main brief at page 16, an insured cannot recover for bad faith if the insurer denies a claim that is "fairly debatable," and the insurer has some arguably justifiable reason for denying the claim.  *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005).  At a minimum, the coverage issues at issue here are "fairly debatable," precluding liability for bad faith.  Count Five should therefore be dismissed.

As to Plaintiffs' CUTPA/CUIPA claim, Plaintiffs assert that their "claim concerning [Allstate's] association with ISO have been the subject of other Complaints where similar Motions to Dismiss have been denied" and cite to *Panciera v. Kemper Independence Ins. Co.*, No. 3:13-CV-1009, 2014 WL 1690387 (D. Conn. April 29, 2014) and *Gabriel*, supra, 2015 WL 5684063.  (ECF No. 22, Pl. Mem., pp. 11-12).  These cases did not involve consideration, as here, of the insurer's specific reasons for denial of the claim at issue.  As with bad faith, there can be no liability under Conn. Gen. Stat. § 38a-816(6) where the insurer's coverage position

was, as here, reasonable and fairly debatable.  *See, e.g., Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, No. X02CV074020477, 2009 WL 5698103, *8 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.,* No. 375290, 2004 WL 573829, at *12 (Conn. Super. Ct. Mar. 3, 2004) (same result).  Accordingly, even if the Court does not grant Allstate's motion to dismiss as to Count Four, it should dismiss Count Six, as Plaintiffs have failed to state a cognizable CUTPA/CUIPA claim.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons stated in Allstate's Memorandum in Support of its Motion to Dismiss, Plaintiffs have failed to state a claim upon which relief can be granted, and Counts Four, Five, and Six should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

_____/s/  *Raymond T. DeMeo*_____

Raymond T. DeMeo (ct02189)
Jessica A. R. Hamilton (ct29702)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8200
Fax:  (860) 275-8299
rdemeo@rc.com
jhamilton@rc.com
*Attorneys for Allstate Insurance Company*

## <u>CERTIFICATION</u>

I hereby certify that on January 3, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.

*/s/ Raymond T. DeMeo*
Raymond T. DeMeo