UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BARRY AGOSTI, and
ROBIN AGOSTI,
    Plaintiffs,

v.

MERRIMACK MUT. FIRE INS. CO., and
ALLSTATE INS. CO.,
    Defendants.

No. 3:16-cv-01686 (SRU)

## RULING AND ORDER

In the present insurance dispute, Allstate Insurance Co. ("Allstate") has moved to dismiss the claims filed against it by Barry and Robin Agosti. The Agostis' complaint alleges in Counts Four, Five, and Six that (1) Allstate breached its contract with the Agostis by denying coverage under their homeowner's insurance policy (the "Allstate Policy") for damage to their basement walls; (2) Allstate breached the implied covenant of good faith and fair dealing by baselessly denying coverage; and (3) Allstate committed unfair and deceptive practices proscribed by the Connecticut Unfair Insurance Practices Act ("CUIPA"), as enforced through the Connecticut Unfair Trade Practices Act ("CUTPA"). Because the Allstate Policy provides coverage only for an "entire collapse," and the Agostis have alleged no facts to suggest such a collapse occurred here, I grant the motion and dismiss the pertinent counts of the complaint.

### I. Standard of Review

A motion to dismiss for failure to state a claim is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a

motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

**II.     Background**

Plaintiffs Barry and Robin Agosti own and reside at a house in Tolland, Connecticut, which is protected by a homeowner's insurance policy underwritten by defendant Allstate. Compl., Doc. No. 1, at Count 1, ¶¶ 1, 3. Prior to September 2015, the Agostis gradually "observed visible cracking in the concrete of their home." *Id.* at ¶ 5. On September 15, 2015, the Agostis "had their basement inspected by a professional structural engineer" because they were concerned about the "visible cracking patterns in the basement walls" and were "aware[] . . . [of]

2

deteriorating concrete issues [from] recent media reports." *Id.* at ¶ 6. The engineer's inspection "indicated the concrete deterioration and cracking were caused by a chemical reaction in the concrete," which he concluded "would continue to progressively deteriorate the basement walls, rendering the structure unusable." *Id.* at ¶ 7. As a result, the engineer "recommended replacement of the concrete basement walls." *Id.*

Following the inspection, on November 10, 2015, the Agostis "made a timely formal claim for coverage under [their] homeowner's insurance policy" with Allstate. *Id.* at Count 4, ¶ 8. They asserted that the loss to their basement walls was covered as a "collapse" due to "hidden decay and/or defective materials." *Id.* at ¶ 10. Although the Allstate Policy provides that Allstate generally "do[es] not cover loss to the property . . . consisting of or caused by: . . . 12. Collapse . . . [or] 15. . . . (g) settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls," Allstate Policy, Ex. C to Allstate's Mot. Dismiss, Doc. No. 17-4, at 31–33, it does offer coverage pursuant to an "Additional Protection," which reads as follows:

> Collapse
> [Allstate] will cover:
>     a) the entire collapse of a covered building structure;
>     b) the entire collapse of part of a covered building structure; and
>     c) direct physical loss to covered property caused by (a) or (b) above.
>
> For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
>     a) a loss we cover under Section I, Coverage C—Personal Property Protection;
>     b) hidden decay of the building structure;
>     c) hidden damage to the building structure caused by insects or vermin;
>     d) weight of persons, animals, equipment or contents;
>     e) weight of rain or snow which collects on a roof;
>     f) defective methods or materials used in construction, repair, remodeling or renovation.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

*Id.* at 40 (emphasis removed).

3

Allstate denied the Agostis' claim on April 19, 2016. Compl., Doc. No. 1, at Count 4, ¶ 11. The Agostis characterize that denial as based on "interpretations of policy provisions [that] are contrary to the [Collapse] provisions of the policy." *Id.* ¶ 12.

On October 7, 2016, the Agostis filed a complaint against Allstate in Connecticut Superior Court, Judicial District of Tolland at Rockville. *See* Notice of Removal, Doc. No. 1, at 1. The Agostis allege that Allstate breached the insurance contract (Count Four), breached the implied covenant of good faith and fair dealing (Count Five), and violated CUTPA/CUIPA (Count Six). Allstate removed the Agostis' complaint to this court on October 10, 2016. *See id.* On November 30, 2016, Allstate moved to dismiss the counts of the complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 17. I heard argument on the motion on January 30, 2017. *See* Doc. No. 28.

**III. Discussion**

Allstate moves to dismiss the Agostis' claim for breach of contract (Count Four) "on the grounds that the alleged damage is not covered under the plain language of the Allstate Policy." Allstate's Mot. Dismiss, Doc. No. 17, at 1. Allstate asserts that if I dismiss the claim for breach of contract, I also must dismiss the claims for breach of the implied covenant of good faith and fair dealing (Count Five) and for violation of CUTPA/CUIPA (Count Six), because "neither can be maintained in the absence of a breach of contract." *Id.* at 2. Alternatively, even if I decline to dismiss the breach of contract claim, Allstate asks that I dismiss the remaining claims "on the separate and independent grounds that . . . Allstate's denial of coverage was not in bad faith, and its . . . coverage position here [was] reasonable and fairly debatable." *Id.*

The Agostis respond that they have "stated a sufficient cause of action under the [Allstate] Policy" because the policy "fail[s] to exclude losses from a chemical reaction." Pls.'

4

Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 4. They argue that the exceptions to the Additional Protection for Collapse cited by Allstate do not preclude coverage, *id.* at 6–7, and that their allegations of bad faith and violation of CUTPA/CUIPA are likewise sufficient. *Id.* at 9–13.

    A. <u>Count Four: Beach of Contract</u>

Allstate asserts that I must dismiss the Agostis' claim for breach of contract because "the alleged damage is not covered under the plain language of the Allstate Policy." Allstate's Mot. Dismiss, Doc. No. 17, at 1. Accordingly, I first must determine whether coverage exists under the policy for the deterioration of the Agostis' basement walls.

"[A]s a matter of general insurance law, the insured has the burden of proving that a benefit is covered." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 441 (2d Cir. 2006). An insurance contract is interpreted by the court according to "the same general rules that govern the construction of any written contract." *Johnson v. Conn. Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011). Thus, "the determinative question is the intent of the parties, that is, what coverage the . . . insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy." *Lexington Ins. Co. v. Lexington Healthcare Grp.*, 311 Conn. 29, 37–38 (2014) (internal alterations omitted). If the policy's terms are "clear and unambiguous," then that language "must be accorded its natural and ordinary meaning." *Johnson*, 302 Conn. at 643. If the terms of the insurance policy are "ambiguous," however, meaning "reasonably susceptible to more than one reading," then then ambiguity "must be construed in favor of the insured because the insurance company drafted the policy." *Id.*

    1. *Does coverage exist under Coverage A (Dwelling Protection)?*

The Agostis argue that their loss is covered under Coverage A (Dwelling Protection) because the Allstate Policy does not specifically "exclu[de] . . . losses due to a chemical

5

reaction." *See* Pls.' Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 4. I disagree, and conclude that the loss to the Agostis' walls is excluded under Coverage A.

Coverage A of the Allstate Policy appear to provide "all-risk" coverage, meaning that "losses caused by *any* fortuitous peril not specifically excluded . . . will be covered." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006); *Costabile v. Metro. Prop. & Cas. Ins. Co.*, 193 F. Supp. 2d 465, 474 (D. Conn. 2002) (holding that identically worded provisions "provide[d] 'all-risk' coverage"). An "all-risk" policy is contrasted with a "named perils" policy, which "covers only losses suffered from an enumerated peril." *Parks Real Estate*, 472 F.3d at 41. "All-risk" policies are not "all-loss" policies, however. *Costabile*, 193 F. Supp. 2d at 477. Rather, such policies "contain express written exclusions and implied exceptions." *Id.* Thus, recovery will not be allowed under an "all-risk" policy if "the policy contains a specific provision expressly excluding the loss from coverage." *Id.*

Although the Agostis' insurance policy does not exclude by name losses that are caused by chemical reactions, it does expressly exclude "loss consisting of or caused by . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls." *Id.*; Allstate Policy, Doc. No. 17-4, at 33. That "specific and unambiguous provision . . . expressly exclude[s] the plaintiffs' loss" in the present case. *See Costabile*, 193 F. Supp. 2d at 477. Under the facts alleged by the Agostis, their loss—if not considered an imminent collapse—clearly "consist[s] of . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls." *See* Compl., Doc. No. 1, at Count 1, ¶ 5; Allstate Policy, Doc. No. 17-4, at 33. The technical cause of the cracking or bulging is irrelevant. Therefore, I hold that the Agostis' loss is excluded from coverage under Coverage A.

2. *Does coverage exist under the Additional Protection for Collapse?*

The Agostis also contend that their loss may be covered as a "collapse." *See* Pls.' Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 8. The Allstate Policy's Additional Protection for Collapse applies to "collapse of a building structure" or a part thereof, "caused by . . . hidden decay of the building structure" or "defective methods or materials used in construction, repair, remodeling or renovation." Allstate Policy, Doc. No. 17-4, at 40. For the reasons stated by the Connecticut Supreme Court in *Beach v. Middlesex Mutual Assurance Co.*, and subsequently followed by many judges of this court, I conclude that the term "collapse," standing alone, "is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 252 (1987); *see, e.g.*, *Roberge v. Amica Mut. Ins. Co.*, 2015 WL 9480008 (D. Conn. Dec. 29, 2015) (Eginton, J.); *Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5797016 (D. Conn. Sept. 30, 2015) (Bryant, J.); *Gabriel v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5684063 (D. Conn. Sept. 28, 2015) (Bolden, J.); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157 (D. Conn. 2014) (Hall, C.J.); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110 (D. Conn. 2014) (Underhill, J.). Other things being equal, such a definition of "collapse" might cover the damage claimed by the Agostis.

The Allstate Policy's Additional Protection includes a number of qualifiers, however, which operate to reduce the scope of coverage. First, "[c]ollapse does not include *settling, cracking, shrinking, bulging or expansion*." *Id.* (emphasis added) Second, "the collapse . . . must be a *sudden and accidental* direct physical loss." *Id.* (emphasis added) Third, the collapse must be an "*entire collapse* of a covered building structure" or a part thereof. *Id.* (emphasis added) Although the first and second conditions do not necessarily bar coverage for the alleged collapse of the Agostis' basement walls, the third condition does. Therefore, I grant Allstate's motion to dismiss the Agostis' claim for breach of contract.

7

a. Is the alleged collapse excluded as "cracking, shrinking, bulging, or expansion"?

Allstate asserts that the Agostis' claim for breach of contract must be dismissed because "the Allstate Policy provides that '[c]ollapse does not include settling, cracking, shrinking, bulging or expansion.'" Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 12–13. Relying heavily on my decision from the bench in *Alexander v. General Insurance Co. of America*, No. 3:16-cv-00059 (SRU), Allstate argues that, under the terms of the policy, "a building could not be considered in a state of collapse even if it showed evidence of cracking, bulging, sagging, bending, leaning, settling, shrinking, or expansion." *Id.* at 11. In response, the Agostis contend that the cracking is merely "the manifestation of the chemical reaction" that caused their walls to deteriorate. Pls.' Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 6. The exception for cracking, they argue, "is in place in order to prevent the homeowner from seeking compensation for every day occurrences," not to bar coverage for a "catastrophic event" such as "the chemical reaction" in the present case. *Id.* at 7.

I agree with the Agostis. In *Beach*, the Connecticut Supreme Court held that an identically worded exclusion could "reasonably be read to exclude loss related to 'settling, cracking, shrinkage, bulging or expansion,' only so long as 'collapse' d[id] not ensue." *Beach*, 205 Conn. at 251. The court reasoned that the policy in that case did not "express a clear unambiguous intent to exclude coverage for a catastrophe that subsequently develop[ed] out of a loss that appeared, at its inception, to fall within the rubric of 'settling, cracking, shrinkage, bulging or expansion.'" *Id.* Other courts have agreed that the language of the "cracking" exclusion "is fairly susceptible to being interpreted as not including *mere* settling or cracking, but including settling or cracking that results in substantial impairment of a home's structural integrity." *See, e.g.*, *Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1227–28 (D. Utah 1996) (internal quotations omitted); *Schray v. Fireman's Fund Ins. Co.*, 402 F. Supp. 2d 1212, 1218

8

(D. Or. 2005) ("[T]he policy's use of the term collapse is fairly susceptible to being interpreted as including settling or cracking that results in substantial impairment of [] structural integrity, as opposed to mere settling or cracking."); *130 Slade Condo. Ass'n v. Millers Capital Ins. Co.*, 2008 WL 2331048, at *5 (D. Md. June 2, 2008) (The "building was not . . . merely showing evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion."). Thus, the Agostis' claim does not fail merely because the impairment initially manifests itself as cracking.

My decision in *Alexander* is not to the contrary. In *Alexander*, the policy "define[d] 'collapse' to mean an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." Mot. Hr'g Tr., Doc. No. 22, at 22, *Alexander*, No. 3:16-cv-0059 (D. Conn. July 7, 2016). The policy also explicitly noted that "[a] building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, leaning, settling, shrinkage or expansion." *Id.* In other words, the *Alexander* policy explicitly disavowed any interpretation that it might "includ[e] settling or cracking that result[ed] in substantial impairment of a home's structural integrity" when the building was still standing. *Cf. Jones*, 935 F. Supp. at 1227–28. The language of the "cracking" exclusion in the present case is much less clear. Indeed, the language of the Allstate Policy is identical in that respect to that of the policy in *Beach*, which the Connecticut Supreme Court held could "reasonably be read" to provide coverage. *See Beach*, 205 Conn. at 251.

"Language in an insurance contract . . . must be construed in the circumstances of a particular case, and cannot be found to be ambiguous or unambiguous in the abstract." *Lexington Ins. Co.*, 311 Conn. at 42 (internal quotation marks, alterations, and emphasis omitted). "[O]ne court's determination that [a] term [] was unambiguous, in the specific context of the case that

9

was before it, is not dispositive of whether the term is clear in the context of a wholly different matter." *Id.* Here, in the context of the Allstate Policy, I do not read the language of the "cracking" exclusion unambiguously to bar coverage of the Agostis' claim. *See Beach*, 205 Conn. at 251. Under such circumstances, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Johnson*, 302 Conn. at 643. Therefore, I hold the "cracking" exclusion alone does not require me to dismiss the Agostis' claims against Allstate.

        b.   Was the alleged collapse "sudden and accidental"?

Allstate also asserts that the policy does not provide coverage because it requires a collapse to be "sudden and accidental," which excludes conditions that result from "progressive deterioration." Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 10. It cites to *Buell Industries v. Greater New York Mutual Insurance Co.*, 259 Conn. 527 (2002), in which the Connecticut Supreme Court "defined the term 'sudden[,]' as . . . used in the sudden and accidental discharge exceptions to the pollution exclusion clauses contained in various insurance policies," to require "a temporally abrupt release of pollutants." *See Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 263 Conn. 245, 276 (2003) (quoting *Buell*, 259 Conn. at 540); Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 10 (discussing *Buell*). Allstate also analogizes its policy's requirement that a collapse be "sudden and accidental" to the *Alexander* policy's definition of collapse to mean an "abrupt falling down or caving in." Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 11. Because "[n]othing in [the Agostis'] [c]omplaint can plausibly be interpreted as an allegation of a 'sudden' collapse," Allstate reasons, the Agostis' loss is excluded under the terms of the policy. *Id.* at 13.

The Agostis' respond that the cause of the loss—the "chemical reaction"—*was* "sudden and accidental." Pls.' Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 4. They note that, according to both their own expert and Allstate's, "there is no way to arrest the process and there is no way to repair the existing damage. . . . [T]he only solution is replacement of the concrete." *Id.* at 5. Because the eventual collapse is merely "an ostentatious manifestation of th[e] chemical reaction," the Agostis appear to argue that the chemical reaction itself constitutes the "physical loss" that should be covered under the policy. *Id.* at 6.

I do not agree with the Agostis' unorthodox interpretations of causation and loss. Crucially, it is clear from the language of the policy that it is the *loss*, not the *cause* of the loss, that must be "sudden and accidental." In *Alexander*, I illustrated the distinction using the example of "insect damage":

> There's termites in the house. No collapse. They're eating away; every day they're eating away. No collapse. They keep eating away. Finally, they eat enough that the beam fails. . . . Now there's coverage. Now you have a collapse or falling in. The fact that it was caused by termites and it was a slow process doesn't mean you didn't have an abrupt collapse. You did, when the beam failed and there was literally a falling of the beam, a failure of the beam.

Mot. Hr'g Tr., Doc. No. 22, at 13–14, *Alexander*, No. 3:16-cv-0059. Thus, in the present case, the Agostis' loss would only be covered if the collapse itself were "sudden and accidental."

The "'sudden and accidental' language" used in insurance policies "has generated an enormous amount of litigation," and "it would be virtually impossible to gauge with precision whether more courts have found 'sudden' . . . to mean 'abrupt,'" as Allstate urges, or "unexpected," as claimed by the Agostis. *See EDO Corp. v. Newark Ins. Co.*, 878 F. Supp. 366, 373–74 (D. Conn. 1995). I need not wade into that swamp of conflicting case law, however, because even assuming—*arguendo*—that the Agostis have plausibly alleged that the claimed

11

"collapse" was "sudden and accidental," they cannot evade the third limitation in the Allstate Policy. As explained in the next section, the "collapse" in this case was not an "entire" collapse.

      c.   Was the alleged collapse an "entire collapse"?

Allstate next contends that the Agostis' breach of contract claim must be dismissed because the policy only covers an "entire collapse." Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 6. The Agostis' complaint, Allstate notes, "does not allege that the house or part thereof has entirely collapsed." *Id.* at 7. Hence, Allstate argues that the Agostis "have failed to allege a plausible breach of contract claim." *Id.* The Agostis essentially do not address that portion of Allstate's argument. *See* Pls.' Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 6 ("[I]f the concrete has crumbled resulting in the entire structure imploding, [that] really has nothing to do with the physical loss that is already occurring."). I agree with Allstate that the gradual deterioration of the basement walls cannot yet be characterized as an "entire collapse," and so I dismiss the Agostis' breach of contract claim against Allstate on that ground.

The definition of "collapse" as "substantial impairment of [] structural integrity" in *Beach* is a default rule, not a mandate of public policy. *See Beach*, 205 Conn. at 251–52. The parties can, if they choose, "modif[y] . . . by contract" the meaning of "collapse." *See Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency*, 644 F.3d 166, 172 (2d Cir. 2011); *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 50 (2d Cir. 2003) (Calabresi, J.) ("[W]e would be inclined to read [the policy] as opting out of this interpretive default . . . ."). Thus, in *Alexander*, I stated that although "[i]n other cases with different policy language I have found the term 'collapse' to be ambiguous," in that case "the term ha[d] been expressly defined in a way that eliminate[d] coverage under the allegations of the complaint." Mot. Hr'g Tr., Doc. No. 22, at 22–

23, *Alexander*, No. 3:16-cv-0059. I conclude that the Allstate Policy's use of the words "entire collapse" similarly eliminates coverage here.

Interpreting a policy with identical language from the same insurer, California's Second District Court of Appeal deemed it "self-evident that the policy's use of the term 'entire' collapse necessarily must refer to an actual, not an imminent collapse." *Jordan v. Allstate Insurance Co.*, 116 Cal. App. 4th 1206, 1221, 11 Cal. Rptr. 169 (2004). "For a building or a portion thereof to sustain an 'entire collapse,'" the court reasoned, "must mean that it has *entirely* collapsed, that is 'wholly,' 'completely,' or 'fully.'" *Id.* (citing *Webster's Third New International Dictionary*). "It would make no sense to apply such a description to a collapse that was merely 'imminent.'" *Id.* "Whether a potential collapse that is properly described as 'imminent' will result in an entire or total collapse or something less, or no collapse at all," the court concluded, "is a matter of pure speculation unless and until such collapse *actually* occurs." *Id.*

Under the present policy, I agree that "the term 'entire collapse' is susceptible of only one reasonable interpretation," namely, an "actual collapse."[1] *Id.* at 1222. The language "'entire collapse' . . . was drafted specifically to limit coverage to actual collapses," and to exclude "imminent collapse" or "structural impairment." *See Ass'n of Unit Owners of Nestani—A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579, 579 (9th Cir. 2011) (mem.); *see also Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 70 P.3d 351, 353 (2003) ("entire collapse . . . means *actually fallen down or fallen into pieces*"). Such "explicit language . . .

---

[1] On their own, the words "entire collapse" could perhaps be read to mean that the *entire structure* must be substantially impaired. In the present case, however, the Allstate Policy contains additional language providing that Allstate "will cover . . . the entire collapse of *part* of a covered building structure," Allstate Policy, Ex. C to Allstate's Mot. Dismiss, Doc. No. 17-4, at 40 (emphasis added), which confirms that an "actual collapse" was meant. *See Jordan v. Allstate Insurance Co.*, 116 Cal. App. 4th 1206, 1221, 11 Cal. Rptr. 169 (2004).

narrow[ing] the scope of collapse coverage"—the meaning of which is obvious even to a layperson—"renders the collapse clause unambiguous." *See Grebow v. Mercury Ins. Co.*, 241 Cal. App. 4th 564, 573, 194 Cal. Rptr. 3d 259 (2015) (other alterations omitted). Because the term "entire collapse" is unambiguous, I need not construe it against the insurer or consult the contract's drafting history. *See Buell*, 259 Conn. at 544–45.

The plain language of the Allstate Policy limits coverage to "entire collapse[s]." Allstate Policy, Doc. No. 17-4, at 40. The Agostis have not alleged that their house or any portion thereof has "entire[ly] collapse[d]." *See* Compl., Doc. No. 1. "[I]f and when the walls fall in" and an "entire collapse" occurs, the Agostis may have a viable claim against Allstate (should the insurer fail to honor the policy). *See* Mot. Hr'g Tr., Doc. No. 22, at 6, *Alexander*, No. 3:16-cv-0059. At present, however, the Agostis fail to state a plausible claim against Allstate for breach of contract, and I dismiss Count Four pursuant to Rule 12(b)(6).

B. <u>Count Five: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

In Count Five of the complaint, the Agostis assert that Allstate violated the implied duty of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Warner v. Konover*, 210 Conn. 150, 154 (1989). A breach of that implied covenant involves a defendant dishonestly "imped[ing] the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract." *De La Concha of Hartford v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004)). "[B]ad faith is not actionable apart from a wrongful denial of a benefit under the policy," however. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798 (2013). If a plaintiff's breach of contract claim fails, "so too does his [or her] claim of bad faith denial of coverage." *Chorches v. Stewart Title Guar. Co.*, 48 F. Supp. 3d 151, 157 (D. Conn. 2014).

14

Allstate asserts that if I dismiss the Agostis' breach of contract claim against Allstate, then I "should also dismiss Count Five . . . alleging a breach of the implied covenant of good faith and fair dealing." Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 15. The Agostis likewise imply in their memorandum (and agreed at oral argument) that Count Five succeeds or fails along with Count Four. *See* Pls.' Mem. Opp'n Mot. Dismiss, Doc. No. 22, at 10.

Because I conclude that I must dismiss the Agostis' claim for breach of contract—and thereby hold that Allstate did not wrongfully "den[y] . . . a contractually mandated benefit" under the policy—I also dismiss the Agostis' claim for breach of the implied covenant of good faith and fair dealing pursuant to Rule 12(b)(6). *See id.* at 796.

C. <u>Count Six: Violation of CUTPA/CUIPA</u>

In Count Six, the Agostis allege that Allstate engaged in unfair trade practices in violation of CUTPA and CUIPA by "deny[ing] coverage for claims such as the [Agostis'] based on other purported exclusions despite a provision[] within the policy that provide[d] coverage for the chemical reaction that occurred and collapse." *See* Compl., Doc. No. 1, at Count 6, ¶ 21. Allstate argues that, like the Agostis' claim for breach of the implied covenant of good faith and fair dealing, the Agostis' CUTPA/CUIPA claim must fail in the absence of a viable breach of contract claim. *See* Mem. Supp. Allstate's Mot. Dismiss, Doc. No. 17-1, at 15.

To succeed on a CUTPA/CUIPA claim, "a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz*, 46 F. Supp. 3d at 165 (citing Conn. Gen. Stat. § 38a-816(6)). The pertinent CUIPA provision is "the prohibition of unfair settlement practices." *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 2016 WL 6246300 at *3 (D. Conn. Oct. 25, 2016). "A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant

15

has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." *Karas*, 33 F. Supp. 3d at 117. Unfair claim settlement practices include "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Conn. Gen. Stat. § 38a-816(6)(F)).

"The requirement that the insurer settle when the insured's liability is 'reasonably clear' means that the existence of liability has to be substantially certain." *Tucker v. AIG*, 2015 WL 403195, at *27 n.48 (D. Conn. Jan. 28, 2015) (quoting 2 *Insurance Claims and Disputes* § 9:35 (6th ed. updated March 2014)). "Logically speaking, liability cannot be substantially certain where it plainly does not exist on the explicit . . . terms of the contract." *Id.* Hence, if "the defendant's interpretation of the policy's coverage limitation was correct," then the "application of that interpretation" cannot have constituted "oppressive, unethical or unscrupulous conduct in violation of the statutes." *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008).

The Agostis' CUTPA/CUIPA claim challenges Allstate's denial of coverage under the insurance policy. "Having no obligation to pay under the policy," however, Allstate "could not have violated CUIPA or CUTPA." *Wright v. State Farm Mut. Auto. Ins. Co.*, 1997 WL 746434, at *4 (Conn. Super. Ct. Nov. 18, 1997); *see Rancourt v. Allstate Ins. Co.*, 2008 WL 5255560, at *3 (Conn. Super. Ct. Dec. 1, 2008). Because I dismiss the Agostis' claim against Allstate for breach of contract, I also dismiss the Agostis' claim for violation of CUTPA and CUIPA pursuant to Rule 12(b)(6).

## IV. Conclusion

For the reasons set forth above, I grant Allstate's motion and dismiss Counts Four, Five, and Six of the Agostis' Complaint. The Clerk shall terminate Allstate as a party to this case.

So ordered.

Dated at Bridgeport, Connecticut, this 28th day of August 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge